TRAVIS LIKE,                    )
                                )
        Petitioner,     )
                                )
    v.                        )        No. 4:04CV129 CEJ
                                )               (FRB)
DAVE DORMIRE,[1]                )
                                )
        Respondent.     )

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This cause is before the Court on Missouri state prisoner Travis Like's pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. All pretrial matters were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) for appropriate disposition.

On January 13, 2000, a jury in the Circuit Court of the City of St. Louis, Missouri, found petitioner guilty of one count of Murder First Degree, three counts of Assault First Degree and four counts of Armed Criminal Action. Petitioner was sentenced to a term of life imprisonment on each of the Murder and Armed Criminal Action counts of conviction, and was sentenced to a

---

[1] In the instant petition, petitioner challenges sentences to be served in the future. Accordingly, Missouri Attorney General Jeremiah W. "Jay" Nixon should be added as a party respondent. Rule 2(b), Rules Governing Section 2254 Cases in the United States District Courts.

fifteen-year term of imprisonment on each of the Assault First Degree counts of conviction, with all terms of imprisonment ordered to be served consecutively to each other. (Resp. Exh. C at 121-26.) On January 16, 2001, the Missouri Court of Appeals affirmed petitioner's conviction and sentence on direct appeal. State v. Like, 41 S.W.3d 538 (Mo. Ct. App. 2001) (per curiam). Petitioner's Motion for Rehearing and/or Transfer to the Supreme Court was denied by the court of appeals on March 12, 2001; and the Missouri Supreme Court denied petitioner's Application to Transfer on April 24, 2001. Id. On July 3, 2001, petitioner filed a motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15, which was denied without an evidentiary hearing. (Resp. Exh. G.) On June 17, 2003, the Missouri Court of Appeals affirmed the denial of post-conviction relief. Like v. State, 108 S.W.3d 748 (Mo. Ct. App. 2003) (per curiam). The instant petition for writ of habeas corpus, signed and verified by petitioner on January 27, 2004, was filed in this Court on February 6, 2004, upon petitioner being granted leave to proceed in the cause in forma pauperis.

Petitioner is currently incarcerated at the Jefferson City Correctional Center in Jefferson City, Missouri.[2] In the

---

[2] At the time petitioner filed the instant petition in February 2004, petitioner was incarcerated at the Missouri State Penitentiary in Jefferson City and so indicated in his petition. In September 2004, the Jefferson City Correctional Center replaced the Missouri State Penitentiary (MSP). Inasmuch as

instant petition, petitioner raises four claims for relief:

1) That petitioner received ineffective assistance of trial counsel in that counsel a) failed to impeach the testimony of witnesses Kevin Chattman and Jermaine Edwards; b) advised petitioner not to testify on his own behalf; and c) abandoned petitioner's claim that he never acted in concert with the actual shooting;

2) That petitioner received ineffective assistance of counsel on direct appeal in that counsel failed to raise a claim that the trial court erred in admitting identification testimony based on an unduly suggestive photo line-up;

3) That petitioner received ineffective assistance of counsel on direct appeal in that counsel failed to raise a claim that the trial court erred in admitting testimony relating to gangs and gang activity; and

4) That the trial court erred in submitting Jury Instruction Nos. 8, 13, 17, and 21 to the jury inasmuch as the evidence did not support the giving of such instructions on Armed Criminal Action.

In response, respondent argues that the claims raised in Grounds 1(b), 1(c), 2, and 3 of the petition are procedurally barred from federal habeas review inasmuch as petitioner failed to properly raise the claims in state court. Respondent further contends that the claims raised in Grounds 1(a) and 4 are without merit and should be denied.

---

petitioner has not notified this Court of any change in his address, the undersigned presumes that petitioner is currently incarcerated at the Jefferson City Correctional Center, the facility which replaced MSP.

## I. Exhaustion Analysis

A petitioner must exhaust his state law remedies before the federal court can grant relief on the merits of his claims in a habeas petition. 28 U.S.C. § 2254(b)(1); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999). The Court must first look to see whether the federal constitutional dimensions of the petitioner's claims have been fairly presented to the state court. Smittie v. Lockhart, 843 F.2d 295, 296 (8th Cir. 1988); see also Boerckel, 526 U.S. at 848. If not, the petitioner may still meet the exhaustion requirement if there are no currently available non-futile state remedies by which he could present his claims to the state court. Smittie, 843 F.2d at 296. When the petitioner's claims are deemed exhausted because he has no available state court remedy, the federal court still cannot reach the merits of the claims unless the petitioner demonstrates adequate cause to excuse his state court default and actual prejudice resulting from the alleged unconstitutional error, or that a fundamental miscarriage of justice would occur in the absence of such review. Coleman v. Thompson, 501 U.S. 722 (1991); Wainwright v. Sykes, 433 U.S. 72, 87 (1977); Keithley v. Hopkins, 43 F.3d 1216, 1217 (8th Cir. 1995); Stokes v. Armontrout, 893 F.2d 152, 155 (8th Cir. 1989). Before reviewing any claims raised in a habeas petition, the Court may require that every ground advanced by the petitioner survive this exhaustion analysis. Rhines v. Weber, 544 U.S. 269 (2005).

A review of the record shows petitioner's claims for relief to be exhausted either because petitioner has properly raised the claims in state court or has no available non-futile state remedy by which he could now pursue his claims.

**II.  Procedural Default**

In Grounds 1(b), 1(c), 2, and 3 of the instant petition, petitioner raises various claims that he was denied the effective assistance of trial counsel and direct appeal counsel.  Petitioner raised these claims in either his pro se motion for post-conviction relief under Missouri Supreme Court Rule 29.15 or in his amended motion, which the motion court denied.  (Resp. Exh. G.)  These claims were not raised on appeal of the denial of the motion, however.  (Resp. Exh. I.)

A claim must be presented at each step of the judicial process in state court to avoid procedural default. Jolly v. Gammon, 28 F.3d 51, 53 (8th Cir. 1994) (citing Benson v. State, 611 S.W.2d 538, 541 (Mo. Ct. App. 1980)).  "Failure to raise a claim on appeal from the denial of a post-conviction motion erects a procedural bar to federal habeas review." Id. (citing Gilmore v. Armontrout, 861 F.2d 1061, 1065 (8th Cir. 1988)).  Because petitioner failed to raise the claims raised in Grounds 1(b), 1(c), 2, and 3 of the instant petition on appeal of the denial of his post-conviction motion, the federal court cannot reach the merits of the claims absent a showing of cause and prejudice or a

demonstration "that failure to consider the claims will result in a fundamental miscarriage of justice."  Coleman, 501 U.S. at 750. Petitioner has neither asserted nor shown cause for or prejudice as a result of his failure to properly pursue these claims in state court.  In addition, because petitioner has made no claim of actual innocence, he cannot satisfy the "fundamental miscarriage of justice" exception to the required showing of cause and prejudice. Schlup v. Delo, 513 U.S. 298, 314-15 (1995); Washington v. Delo, 51 F.3d 756, 761 (8th Cir. 1995); see also O'Rourke v. Endell, 153 F.3d 560, 566 (8th Cir. 1998) (where petitioner does not assert actual innocence, court does not consider any such claim).

Accordingly, the claims raised in Grounds 1(b), 1(c), 2, and 3 of the instant petition are procedurally barred from review and should be denied.

### III.  Claims Addressed on the Merits

A review of the record shows petitioner to have fairly presented to the state court the claims raised in Grounds 1(a) and 4 of the instant petition, which the state court rejected on their merits.  As such, this Court turns to the merits of petitioner's claims.

Section 2254(d)(1) requires federal habeas courts to test the determinations of state courts "only against 'clearly established Federal law, as determined by the Supreme Court of the United States,'" and prohibits the issuance of a writ of habeas

corpus "unless the state court's decision is 'contrary to, or involved an unreasonable application of,' that clearly established law." Williams v. Taylor, 529 U.S. 362, 379 (2000). The federal law must be clearly established at the time petitioner's state conviction became final, and the source of doctrine for such law is limited to the United States Supreme Court. Id. at 380-83.

A state court's decision is contrary to clearly established Supreme Court precedent when it is opposite to the Court's conclusion on a question of law or different than the Court's conclusion on a set of materially indistinguishable facts. Williams, 529 U.S. at 412-13; Carter v. Kemna, 255 F.3d 589, 591 (8th Cir. 2001). A state court's determination is an unreasonable application of Supreme Court precedent if it unreasonably refuses to extend a legal principle to a new context where it should apply. Carter, 255 F.3d at 592 (citing Williams, 529 U.S. at 407). "Federal habeas relief is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect." Id. (quoting Williams, 529 U.S. at 410-11).

On direct appeal, the Missouri Court of Appeals summarized the evidence adduced at trial which showed that petitioner, Jabbarr Spann and Rubin Harold were members of the 46 Pope Street gang, which was involved in a feud with the Six Deuces street gang. Petitioner asked Chris Jarmon to use a yellow pickup truck – which Jarmon had obtained in exchange for cocaine – "to go wet some Dookies," which Jarmon took to mean that petitioner wanted

to use the truck to shoot someone belonging in the Six Deuces gang. Jarmon gave the truck key to petitioner who then gave the key to Spann. Spann drove the truck while petitioner sat in the passenger seat and Harold rode in the back of the truck. Petitioner and Spann had .380 caliber pistols in their possession. Harold had in his possession a Chinese-made SKS semi-automatic assault rifle which he had wrapped in a nylon jacket. (Resp. Exh. F at 2-3.)

> At about 4:00 p.m., Michael Thomas, Latalus Miller and Shawn Booker were standing in front of 4215 Linton, in territory claimed by the Six Deuces. Although Thomas was not a member of a gang, he was attired in gang colors. Booker also wore gang colors. Miller was dressed in black.
>
> The murder victim, eight-year-old Dominique Evans, was jumping rope in front of the address. Her mother, Tevelder Brooks, was pouring gasoline into a lawn mower. . . .
>
> The yellow truck containing [petitioner] and his accomplices drove down Penrose and turned left onto Linton. The truck drove down Linton and then stopped by Thomas, Miller and Booker. A gun barrel came out of the driver's side of the truck, aimed at Thomas, Miller and Booker. The assault rifle was also aimed at them from the bed of the pickup. The three evaded the numerous shots fired at them by hitting the ground or running.
>
> A high-velocity bullet from the assault rifle struck Dominique Evans in the face and caused a "burst injury" to her skull that damaged her brain. She died from the wound.
>
> . . .
>
> The yellow pickup truck drove down Linton. It turned onto Carter and stopped at a stop sign at College and Carter. Two men

>who were working on a house at the intersection, Jermaine Edwards and Kevin Chattman, had heard the shooting and observed the pickup truck. They saw that there were three men in the truck and that the man in the back of the truck had a rifle between his legs. The man in the back was talking to the other two through the truck's back window, and they were all laughing. They identified [petitioner] as the person riding in the truck's passenger seat.
>
>. . .
>
>It is undisputed . . . that [petitioner] possessed a .380 caliber firearm and that physical evidence indicates at least one bullet was fired through the back window of the pickup from the passenger side of the vehicle, where [petitioner] was sitting. The victim's mother, Tevelder Brooks, testified that she saw a hand holding a gun out the truck's rear window as the truck drove away after the shooting. Additionally, numerous .380 shell casings and bullets were found in the truck and at the crime scene.

(Resp. Exh. F at 3-4, 6.)[3]

A.  <u>Ground 1(a)</u>

In Ground 1(a) of the instant petition, petitioner claims that he received ineffective assistance of trial counsel in that counsel failed to impeach the testimony of witnesses Kevin Chattman and Jermaine Edwards with their failure to positively identify petitioner in a photo line-up.  On appeal of the denial of post-conviction relief, the Missouri Court of Appeals denied

---

[3]Inasmuch as petitioner does not rebut these factual findings by clear and convincing evidence, they are presumed to be correct. 28 U.S.C. § 2254(e)(1).

petitioner's claim:

> [M]ovant alleged no facts that showed how impeaching the witnesses on their ability to tentatively identify him when viewing the photo line-up would have provided him a defense or changed the outcome of his trial, particularly given the fact that both witnesses positively identified him at the live line-up and at trial and the fact that there was substantial evidence of movant's participation in the crimes at trial. Further, movant did not allege any facts to overcome the presumption that his trial counsel's decision not to impeach the witnesses on these statements was a matter of sound trial strategy.

(Resp. Exh. K at 4.)

At the time petitioner's conviction became final, the law was clearly established that the Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show that 1) his counsel's performance was deficient, and 2) the deficient performance prejudiced his defense. Id. at 687. In evaluating counsel's performance, the basic inquiry is "whether counsel's assistance was reasonable considering all the circumstances." Id. at 688. The petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. To establish prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

In the instant cause, the Missouri Court of Appeals articulated the Strickland standard of review (Resp. Exh. K at 3-4) and found petitioner not to have shown prejudice by counsel's conduct inasmuch as, regardless of the witnesses' hesitancy in positively identifying petitioner in a photographic line-up, they nevertheless positively identified him at a live line-up and at trial. (Id. at 4.) The court of appeals also found petitioner unable to show prejudice by counsel's conduct given the "substantial evidence" of petitioner's guilt as adduced at trial. (Id.) Where evidence of petitioner's guilt as presented at trial is substantial and the proposed testimony would have done little to weaken the strength of the State's case, it cannot be said that such testimony would reasonably have led to a different result at trial. See Lawrence v. Armontrout, 31 F.3d 662, 667-68 (8th Cir. 1994); see also Mansfield v. Dormire, 202 F.3d 1018, 1023 (8th Cir. 2000) (petitioner unable to show prejudice by counsel's failure to present certain evidence given that the State's case against him was not weak); Reed v. Norris, 195 F.3d 1004, 1006 (8th Cir. 1999) (unnecessary to discuss reasonableness of counsel's conduct inasmuch as overwhelming evidence of guilt would render it "impossible" for petitioner to demonstrate prejudice); Marbley v. Lockhart, 846 F.2d 1161, 1162-63 (8th Cir. 1988). Further, as

noted by the court of appeals, petitioner has presented no facts or argument sufficient to overcome the presumption that counsel's determination not to question the witnesses as to the photo line-up was sound trial strategy. See Strickland, 466 U.S. at 689. Decisions relating to trial strategy are "virtually unchallengeable." Id. at 690.

Based on the above, the state court's determination that petitioner was not denied the effective assistance of counsel was well based on law and fact. This Court is unaware of any "clearly established Federal law, as determined by the Supreme Court of the United States" of which the court's decision runs afoul, nor has petitioner demonstrated such. Therefore, it cannot be said that the state court's determination "resulted in a decision that was contrary to, or involved an unreasonable application of," clearly established federal law. 28 U.S.C. § 2254(d)(1). Nor has petitioner shown that the court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). As such, the instant claim should be denied. 28 U.S.C. § 2254(d).

B. Ground 4

In Ground 4 of the instant petition, petitioner claims that the trial court erred in submitting Jury Instruction Nos. 8, 13, 17, and 21 on Armed Criminal Action inasmuch as the evidence did not show that petitioner used a deadly weapon to commit the

offenses of Murder First Degree and Assault First Degree.[4]  On direct appeal, the Missouri Court of Appeals denied petitioner's claim, finding Missouri law to support the instruction as given:

> MAI-CR 3d 332.02, Note on Use 6, provides as follows:
>
>> Where the defendant's liability for the underlying felony is premised on accomplice liability and where it is alleged that the defendant himself employed a deadly weapon or dangerous instrument in the commission of the offense, it is not necessary to submit the verdict director on Armed Criminal Action (MAI-CR 3d 332.02) in the form of Aider Liability (MAI-CR 3d 304.04). Where it is alleged that a person other than the defendant employed a deadly weapon or dangerous instrument, the verdict director for armed criminal action must be in the form of MAI-CR 3d 304.04[.]
>
> The instruction was proper because the evidence indicated that all three defendants possessed and used weapons during the offense. Point denied.

(Resp. Exh. F at 6-7.)

Because the petitioner's liability was premised on accomplice liability (see Resp. Exh. C at 77-78, 85-86, 90-91, 95-96), and "the evidence indicated that all three defendants possessed and used weapons during the offense," the court of appeals found the

---

[4]A review of the record shows the instructions to have been given in accordance with MAI-CR 332.02. (Resp. Exh. C at 82, 88, 93; Exh. C at 98, submitted by supplement Nov. 13, 2006.)

trial court's giving of MAI-CR 332.02 on Armed Criminal Action to be proper, despite the fact that no witness directly testified that petitioner fired a gun at the victims. (Resp. Exh. F at 6-7.)

To the extent petitioner argues that the court erred as a matter of state law in giving the instruction, the undersigned notes that such a claim is not cognizable in a federal habeas proceeding. See Estelle v. McGuire, 502 U.S. 62, 67 (1991) (federal habeas corpus relief does not lie for errors of state law); Sweet v. Delo, 125 F.3d 1144, 1151 (8th Cir. 1997) ("It is not the office of a federal habeas court to determine that a state court made a mistake of state law."). Further, in light of the evidence adduced at trial as summarized by the Missouri Court of Appeals, see supra at pp. 7-9, there was more than sufficient evidence to find that petitioner himself employed a deadly weapon or dangerous instrument in the commission of the offense, as shown by his possession of a .380 caliber pistol, the numerous .380 shell casings and bullets found at the scene and in the truck, the eyewitness testimony that a person inside the truck was pointing a gun out of the truck's back window as the truck fled the scene, the physical ballistic evidence that at least one shot was fired through the back window from the passenger side of the truck (Resp. Exh. A at 394-95, 402-03), and the eyewitness testimony placing petitioner in the passenger seat of the truck immediately after the shooting. Such evidence, coupled with the fact that petitioner's liability for the underlying felonies of Murder First Degree and

Assault First Degree was premised on accomplice liability, supported the instructions as given on Armed Criminal Action and petitioner's convictions thereon. See Jackson v. Virginia, 443 U.S. 307, 319 (1979).

Accordingly, the decision of the state court in denying petitioner relief on his claim of instructional error was well based on law and fact. This Court is unaware of any "clearly established Federal law, as determined by the Supreme Court of the United States" of which the court's decision runs afoul, nor has petitioner demonstrated such. Therefore, it cannot be said that the state court's determination "resulted in a decision that was contrary to, or involved an unreasonable application of," clearly established federal law. 28 U.S.C. § 2254(d)(1). Nor has petitioner shown that the court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). As such, the claim raised in Ground 4 should be denied. 28 U.S.C. § 2254(d).

Therefore, for all of the foregoing reasons,

**IT IS HEREBY RECOMMENDED** that Missouri Attorney General Jeremiah W. "Jay" Nixon be added as party respondent to the cause.

**IT IS FURTHER RECOMMENDED** that Travis Like's petition for writ of habeas corpus (Docket No. 1) be dismissed without further

proceedings.

The parties are advised that any written objections to this Report and Recommendation shall be filed not later than **November 27, 2006**. Failure to timely file objections may result in waiver of the right to appeal questions of fact. <u>Thompson v. Nix</u>, 897 F.2d 356, 357 (8th Cir. 1990).


                                    _____
                                    UNITED STATES MAGISTRATE JUDGE


Dated this  _15th_  day of November, 2006.